## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIDELITY NATIONAL TITLE | : | |
| INSURANCE COMPANY, in its | : | |
| individual capacity and as subrogee of | : | CIVIL ACTION |
| JP MORGAN BANK, N.A., successor to | : | |
| WASHINGTON MUTUAL BANK, F.A., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| VINCENT E. CRAVEN, Jr., et. al., | : | NO.  12-4306 |
| | : | |
| Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S.J.                                    November 20, 2012

Currently pending before the Court are Defendants Vincent E. Craven, Aimee F. Craven, and Valerie A. Craven (collectively "the Cravens") Motion to Dismiss Plaintiff Fidelity National Title Insurance Company ("Fidelity")'s Complaint and Defendant Tammi M. Torbik's Motion to Dismiss Fidelity's Complaint.  For the following reasons, the Motions are granted in part and denied in part.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

This suit arises out of an alleged conspiracy to defraud Plaintiff Fidelity and other lenders by taking out mortgages and failing to record them properly so that they went unpaid at foreclosure.  The facts of the case, as set forth in the Complaint, focus on Defendants' actions in the mortgaging and sales of three properties.

A.      **328 Fifth Avenue, Conshohocken, PA**

On or about January 15, 2003, Valerie Craven conveyed the real property located at 328 Fifth Avenue, Conshohocken, PA ("The Conshohocken Property") to Vincent Craven, her father, via deed.  (Compl. ¶ 10.)  The deed was properly recorded with the Office of the Recorder of Deeds of Montgomery County.  (<u>Id.</u>)  On or about March 4, 2005, Mr. Craven executed and delivered two mortgages against the Conshohocken Property.  (<u>Id.</u> ¶ 11.)  The first was an open-end mortgage in favor of Wachovia Bank, FSB ("Wachovia") in the amount of $105,000.00.  (<u>Id.</u>)  This mortgage was recorded on March 24, 2005.  (<u>Id.</u>)  Secondly, also on March 4, Mr. Craven executed a mortgage in favor of Washington Mutual Bank, F.A. ("Washington Mutual") in the amount of $213,750.00.  (<u>Id.</u>)  This mortgage was recorded on April 14, 2005.  (<u>Id.</u>)

After these mortgages were taken out, Whitford Land Transfer, Inc. ("Whitford"), an authorized title agent of Fidelity, issued a Loan Policy of Title Insurance ("The March 2005 Loan Policy") to Washington Mutual, insuring that its mortgage was a first position mortgage lien against the Conshohocken Property.  (<u>Id.</u> ¶ 12.)  Defendant Torbik, in her capacity as a closing agent for Whitford, processed the March 2005 Loan Policy.  (<u>Id.</u> ¶ 13.)  Neither Mr. Craven nor Ms. Torbik disclosed to Fidelity that the Wachovia mortgage and the Washington Mutual mortgage were executed on the same day.  (<u>Id.</u> ¶¶ 14–15.)  Because the Wachovia mortgage was recorded ahead of the Washington Mutual mortgage, the Washington Mutual mortgage was not a first position mortgage lien.  (<u>Id.</u> ¶ 16.)   As a result, Washington Mutual tendered a claim under the March 2005 Loan Policy.  (<u>Id.</u> ¶ 17.)

On or about October 11, 2005, Mr. Craven conveyed the Conshohocken property to his wife, Aimee Craven, under a deed dated September 23, 2005.  (<u>Id.</u> ¶ 18.)  This deed was recorded

2

on November 20, 2006.  (Id.)  In conjunction with this sale, on or about October 11, Aimee

Craven executed a purchase money mortgage against the Conshohocken Property in favor of

Washington Mutual for $312,000.00.  (Id.)  This mortgage was recorded on October 5, 2006.  (Id.)

Ms. Torbik also processed this transaction wherein Aimee Craven "purchased" and mortgaged the

Conshohocken Property from her husband.  (Id. ¶ 20.)  After doing so, Ms. Torbik issued a check

payable to Washington Mutual for an amount sufficient to satisfy the debt from the March 2005

Washington Mutual mortgage.  (Id. ¶ 21.)   However, instead of delivering the check to

Washington Mutual, Ms. Torbik delivered it to Mr. Craven.  (Id. ¶ 22.)  Mr. Craven then

fraudulently negotiated the check and deposited the funds to a bank account owned by his own

company, Monument Mortgage.  (Id. ¶ 23.)  As a result of these actions, neither the Wachovia nor

the Washington Mutual March 2005 mortgage was paid off.  (Id. ¶ 24–25.)  Both Ms. Torbik and

Aimee Craven were aware of these mortgages at the time of the sale from Mr. Craven to Aimee.

(Id. ¶ 26–27.)

     In connection with the October 2005 sale from Mr. Craven to his wife, Aimee, and the

corresponding purchase money mortgage, Ms. Torbik and Whitford issued another Loan Policy of

Title Insurance, which insured the purchase money mortgage as a first position mortgage lien

against the Conshohocken Property.  (Id. ¶ 28.)  However, despite committing Fidelity (via its

agent, Whitford) to insure the October 2005 purchase money mortgage as a first position

mortgage lien, Ms. Torbik recorded this mortgage as a *third* position mortgage lien behind the

original Wachovia and Washington Mutual mortgages.  (Id. ¶ 29.)

     Aimee Craven eventually defaulted on the loan secured by the 2005 purchase money

mortgage.  (Id. ¶ 30.)  While preparing to initiate foreclosure, Washington Mutual obtained a title

3

report indicating that both the Wachovia and original Washington Mutual mortgages remained of record.  (Id. ¶ 31.)  Mr. Craven defaulted on both of these mortgages.  (Id. ¶ 32.)  As a result of Mr. Craven's default on its loan, Wachovia secured a judgment in mortgage foreclosure against Mr. Craven and scheduled a Sheriff's sale of the property for June 23, 2010.  (Id. ¶ 33.)  In order to avoid a divestiture of both the March 2005 insured mortgage and the October 2005 insured mortgage, Fidelity paid off Mr. Craven's loan secured by the Wachovia mortgage.  (Id. ¶ 34.)

JPMorgan Chase Bank, N.A. (Chase), through the acquisition of certain assets of Washington Mutual, is now the holder of the March 2005 and October 2005 insured mortgages. (Id. ¶ 35.)  Pursuant to its obligations under the October 2005 loan policy, Fidelity is tendering payments to Chase in satisfaction of the March 2005 mortgage.  (Id. ¶ 36.)

### B.      922 Montgomery Avenue, Unit C-5, Bryn Mawr, PA

On or about March 9, 2004, Valerie Craven conveyed the real property at 922 Montgomery Avenue, Unit C-5, Bryn Mawr, PA ("The Bryn Mawr C-5 Property") to her father, Mr. Craven, under a deed which was never recorded.  (Id. ¶ 37.)  Also on or about March 9, 2004, Mr. Craven executed a mortgage against the Bryn Mawr C-5 Property in favor of Washington Mutual for $140,000.00.  (Id. ¶ 38.)  On behalf of Fidelity, Whitford and Ms. Torbik issued a loan policy insuring this mortgage as a first position mortgage lien against the property.  (Id. ¶ 39.) Ms. Torbik, however, failed to record the mortgage.  (Id. ¶ 40.)

On or about September 23, 2005, Mr. Craven sold the Bryn Mawr C-5 Property to his wife, Aimee, under a deed that was recorded on April 18, 2006.  (Id. ¶ 42.)  At this time, the insured C-5 mortgage was not paid off.  (Id. ¶ 43.)  Subsequently, on July 24, 2006, Aimee Craven conveyed the Bryn Mawr C-5 Property to Vincent Varvolis, under a deed recorded on March 15,

2007.  (Id. ¶ 44.)  Mr. Varvolis also executed a mortgage against the property in the amount of $180,000.00, which was recorded on March 15, 2007.  (Id. ¶ 46.)  The original insured C-5 mortgage executed by Mr. Craven was still not paid off.  (Id. ¶ 45.)

Because neither the original insured C-5 mortgage nor the deed conveying the house from Valerie Craven to Vincent Craven was ever recorded, the insured C-5 mortgage was never perfected as a lien.  (Id. at ¶ 47.)  Moreover, the insured C-5 mortgage did not attach to the property when it was conveyed from Mr. Craven to Mr. Varvolis.  (Id. ¶ 48.)  As a result, Plaintiff Fidelity paid Chase (the successor to Washington Mutual) for the insured C-5 mortgage.  (Id. ¶ 49.)

### C.      922 Montgomery Avenue, Unit E-5, Bryn Mawr, PA

The facts for the real property at 922 Montgomery Avenue, Unit C-5, Bryn Mawr, PA ("The Bryn Mawr E-5 Property") are almost identical to those for the Bryn Mawr C-5 Property. On or about March 9, 2004, Valerie Craven conveyed the Bryn Mawr E-5 Property to her father, Mr. Craven, under a deed which was never recorded.  (Id. ¶ 50.)  Also on or about March 9, 2004, Mr. Craven executed a mortgage against the Brywn Mawr E-5 Property in favor of Washington Mutual for $138,000.00.  (Id. ¶ 51.)  On behalf of Fidelity, Whitford and Ms. Torbik issued a loan policy insuring this mortgage as a first position mortgage lien against the property.  (Id. ¶ 52.) Ms. Torbik, however, failed to record the mortgage.  (Id. ¶ 53.)

On or about July 19, 2006, Aimee Craven conveyed the Bryn Mawr E-5 Property to Mr. Varvolis, under a deed recorded on March 15, 2007.  (Id. ¶ 55.)  Mr. Varvolis also executed a mortgage against the property in the amount of $180,000.00, which was recorded on March 20, 2007.  (Id. ¶ 46.)  The original insured E-5 mortgage executed by Mr. Craven was still not paid

off.  (Id. ¶ 45.)

Because neither the original insured E-5 mortgage nor the deed conveying the house from Valerie Craven to Vincent Craven was ever recorded, the insured E-5 mortgage was never perfected as a lien.  (Id. at ¶ 58.)  Moreover, the insured E-5 mortgage did not attach to the property when it was conveyed to Mr. Varvolis.  (Id. ¶ 59.)  As a result, Plaintiff Fidelity paid Chase (the successor to Washington Mutual) for the insured E-5 mortgage.  (Id. ¶ 60–61.)

     **D.**    **Procedural History**

Plaintiff Fidelity brought suit on July 30, 2012, alleging ten counts, including (1) fraud against Vincent Craven, Aimee Craven, and Monument Mortgage for failing to disclose to Fidelity the existence of the Wachovia mortgage and the numerous transfers and sales of the properties in question; (2) fraud against Vincent Craven, Aimee Craven, and Valerie Craven for directing Tammi Torbik to not record the various mortgages and for failing to inform Fidelity that the instruments were never recorded; (3) fraud against Tammi Torbik for failing to disclose the above information and for directing the Washington Mutual payoff check for the 2005 Conshohocken property mortgage to Mr. Craven; (4) negligence against Tammi Torbik; (5) breach of fiduciary duty against Tammiy Torbik; (6) breach of contract against Vincent Craven and Aimee Craven; (7) unjust enrichment against Vincent Craven, Aimee Craven, Valerie Craven, and Monument Mortgage; (8) conversion against Vincent Craven, Aimee Craven, Valerie Craven, and Monument Mortgage; (9) civil conspiracy against Vincent Craven, Aimee Craven, Valerie Craven, and Tammi Torbik; and (10) violations of the Racketeer Influence and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962 et. seq.

Defendants Vincent, Valerie, and Aimee Craven filed a Motion to Dismiss Claims I, II,

VI, VII, VIII, IX, and X on September 7, 2012.  Fidelity filed a Response in Opposition on September 21, and the Cravens filed a Reply Brief on September 27.  Defendant Tammi Torbik filed her own Motion to Dismiss Claims III, IV, V, IX, and X on September 27, 2012.  Fidelity filed a Response in Opposition on October 26.  The Court will now consider the merits of these Motions.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678–79.  Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level'") (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static.  Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  Phillips, 515 F.3d at 233.  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

### A.   Whether Fidelity's Claims Are Barred by the Relevant Statutes of Limitations

The Federal Rules of Civil Procedure indicate that a statute of limitations defense cannot be used in the context of a Rule 12(b) (6) motion, but "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d

8

1380, 1385 n.1 (3d Cir. 1994).  This "Third Circuit Rule" explains that, where the face of the pleadings does not unequivocally reveal whether a cause of action has been commenced within the limitations period, the Court may not dismiss the claim on a Rule 12 motion.  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002); see also Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp. 2d 356, 358–59 (E.D. Pa. 2001) (holding that for a Rule 12 dismissal of a claim as time-barred, noncompliance with limitations period must clearly appear on the face of the pleading).

Pennsylvania law recognizes that "in some circumstances, although the right to institute suit may arise, a party may not, despite the exercise of diligence, reasonably discover that he has been injured." Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000). In these cases, the discovery rule applies.  Id.  "The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably knows that he has been injured and that this injury has been the cause of another party's conduct."  Id.  A court presented with an assertion that the discovery rule is applicable, "must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause." Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005).  While this question is normally an issue for the jury, where reasonable minds could not differ in finding that a party knew of or should have known, by the exercise of reasonable diligence, of his injury and its cause, the court may determine that the discovery rule does not apply as a matter of law. Id. at 858–59; see Sakol v. Nationwide Mut. Ins. Co., No. Civ.A.06-735, 2007 WL 1811215, at *5 (M.D. Pa. Jun. 21, 2007) (declining to apply discovery rule where plaintiff insured argued that the defendant insurer presented false information to insured about his policy, leading him to believe

that he was not eligible for benefits and obscuring bad faith actions; the court found that bad faith claim accrued upon denial of coverage).

The Cravens and Ms. Torbik seek to dismiss all ten counts of the Complaint as being time barred by the applicable statutes of limitation.  Defendants note the correct limitations periods for each of the counts as being between two and four years,[1] and highlight that the facts of the case occurred in 2004–2006.  Fidelity counters by stating that the injury did not occur and the statute did not begin to accrue until it began paying Wells Fargo (formerly Wachovia) and Chase Bank (formerly Washington Mutual) earlier in 2012.  Secondly, Fidelity claims that the discovery rule is applicable to the facts of the case, and there is no indication that it could have learned about Defendants' behavior at an earlier time.

Following the Third Circuit rule, it is not clear on the face of the complaint when Fidelity knew or should have known about the alleged unlawful behavior by the Cravens and Ms. Torvik.  Though the alleged actions all occurred in 2004–2006, the Complaint contains no allegations suggesting that Fidelity knew or should have known about the injury—which is the correct time for the statute of limitations to accrue on any of the ten claims.  Discovery may ultimately reveal that the claims are time barred by the relevant statutes.  A Rule 12 motion is not, however, the appropriate avenue for asserting this defense when it is not apparent from the face of the

---

[1]More specifically, the statute of limitations for the various counts are as follows.  Two years for claims of fraud.  42 Pa. Cons. Stat. § 5524(7).  Two years for claims of negligence.  42 Pa. Cons. Stat. § 5524(7).  Two years for claims of breach of fiduciary duty. 42 Pa. Cons. Stat. § 5524(7).  Four years for claims of breach of contract.  42 Pa. Cons. Stat. § 5525.  Four years for claims of unjust enrichment.  42 Pa. Cons. Stat. § 5525.  Two years for claims of conversion.  42 Pa. Cons. Stat. § 5524(3).  Two years for claims of civil conspiracy.  42 Pa. Cons. Stat. §5524(7).  Four years for claims of RICO violation.  Prudential Ins. Co. Of Am., et al. v. U.S. Gypsum Co. et al., 359 F.3d 226 (3d Cir. 2004).

Complaint that the claims are time-barred.

**B.     Fidelity's Claims for Fraud Against All Defendants**

Both the Cravens and Ms. Torvik seek to dismiss the fraud counts (I–III).  All Defendants claim that the fraud counts are (1) barred by the "gist of the action" doctrine and (2) improperly pled with the particularity required for claims of fraud by the Federal Rules.

**i.     Fidelity's Fraud Claims Are Not Barred By The Gist of the Action Doctrine**

The Cravens seek to dismiss Fidelity's fraud claims under the "gist of the action" doctrine. In general, courts are cautious about permitting tort recovery on contractual breaches.  Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964).  In eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10 (Pa. Super. Ct. 2002), the Pennsylvania Superior Court emphasized that the "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims."  Id. at 14.[2]  The simple existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other.  Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 104 (3d Cir.2001).  The gist of the action doctrine, however, precludes one from pursuing a tort action for the mere breach of contractual duties, without any separate or independent event giving rise to the tort.  Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co., 256 F. Supp.2d 329, 340 (E.D. Pa. 2003).

---

[2]  Although the Pennsylvania Supreme Court has not explicitly adopted the gist of the action doctrine, both the Pennsylvania Superior Court and multiple United States District Courts have predicted that it will.  McCloskey v. Novastar Mortgage, Inc., No. Civ.A.05-1162, 2007 WL 320287, at *6 n. 10 (E.D. Pa. Jan. 29, 2007) (citing cases).

"When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort."  Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp.2d 644, 651 (W.D. Pa.1999).  To determine whether the gist of the claim sounds in contract or in tort, the court must determine the source of the duties allegedly breached. Sunburst Paper, LLC v. Keating Fibre Intern., No. Civ.A.06-3957, 2006 WL 3097771, at *2 (E.D. Pa. Oct. 30, 2006).  "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals."  eToll, 811 A.2d at 14 (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 829 (Pa. Super. Ct. 1992)).  "In other words, if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort."  Sunburst Paper, 2006 WL 3097771, at *2. More specifically defined, the doctrine bars tort claims:  (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.  eToll, 811 A.2d at 19.  Whether the gist of the action doctrine applies in any particular setting is a question of law.  Bohler-Uddeholm, 247 F.3d at 103.

In the current case, the Cravens argue that Fidelity's fraud claim is simply a recasting of its breach of contract claim (discussed below).  However, Fidelity's breach of contract claim arises out of its subrogee status as to Washington Mutual and the mortgages it provided on the three properties.  The claims of fraud center around misrepresentations in connection with the title

insurance policies taken out on the three properties.  Because the fraud claims arise in the context

of  different "contracts" than the ones for which Plaintiff is suing for breach, the claims are not

barred by the gist of the action doctrine.

### ii.      Fidelity's Fraud Claims Are Not Pled with Particularity

Rule 9(b) of the Federal Rules of Civil Procedure provides that, when alleging a cause of

action based on fraud, "a party must state with particularity the circumstances constituting

fraud[.]" Fed.R.Civ.P. 9(b) (emphasis added). Rule 9(b) applies with equal force to fraud actions

under federal statutes as to those actions that are based on state law but brought in federal court.

See Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir.2007); Christidis v. First Pa. Mortg.

Trust, 717 F.2d 96, 99 (3d Cir. 1983). Under Pennsylvania law, the six elements of a common law

fraud action are: (1) a misrepresentation; (2) material to the transaction; (3) made falsely; (4) with

the intent of misleading another to rely on it; (5) justifiable reliance resulted; and (6) injury was

proximately caused by reliance.  Santana Prods., Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d

123, 136 (3d Cir. 2005) (citing Viguers v. Philip Morris USA, Inc., 837 A.2d 534 (Pa. Super. Ct.

2003)).  "In real estate transactions, fraud arises where a seller knowingly makes a

misrepresentation, undertakes a concealment calculated to deceive, or commits non-privileged

failure to disclose."  Sewak v. Lockhart, 699 A.2d 755, 759 (Pa. Super. Ct. 1997) (citing De

Joseph v. Zambelli, 139 A.2d 644, 647 (Pa. 1958)).  In order to survive a motion to dismiss, the

plaintiff's complaint must "plead or allege the date, time and place of the alleged fraud[,] or

otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico,

507 F.3d at 200 (citing Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004)).

Both the Cravens and Ms. Torbik claim that Fidelity has failed to allege with the requisite particularity the facts necessary to give precision and substantiate the allegations of fraud. Fidelity claims that Defendants failed to disclose the existence of the unsatisfied mortgages for Wachovia and Washington Mutual, and by failing to inform Fidelity that the deeds and mortgages for the properties at issue were not recorded.  Similarly, it claims that Ms. Torbik engaged in fraud by failing to record the mortgages and by conveying the payment check to Mr. Craven instead of Washington Mutual.

Fidelity does not sufficiently meet the heightened pleading requirements.  Though it claims that the Cravens generally failed to disclose the existence of the prior mortgages on the property, it does not provide any particular allegations of statements or documents denying the existence of such liens, which would be expected prior to a Title Company granting a policy insuring that a mortgage is unencumbered and senior.  There are no dates, times, or places at which such misrepresentations were made.  Generally alleging that the Cravens "failed to disclose" this information is insufficient.  The Court is cognizant that Fidelity is alleging a failure to disclose information rather than an affirmative misrepresentation.  Under the circumstances alleged, however, it stretches the bounds of reasonableness to believe that there were no questions asked about the existence of prior liens or mortgages by a Title Insurance company granting a policy that, in fact, insured there were no prior liens or mortgages.

Similarly, Fidelity fails to allege with particularity the claims of fraud against Ms. Torvik. Fidelity alleges that she purposely failed to record the mortgages and delivered the mortgage payout check to Mr. Craven instead of Washington Mutual.  The Complaint, however, does not attach a copy of the check, does not allege the date on when it was issued or delivered, and does

14

not allege any record of the check being signed over to Mr. Craven.  Similarly, a simple allegation that Ms. Torvik failed to record the mortgages are not the kind of facts that suggest that fraud has occurred.  Without pleading more specific facts about the failure to deliver this check or the circumstances surrounding the failures to record, Fidelity cannot prevail on a claim against Ms. Torvik for fraud.

Plaintiff's claims on fraud (Counts I–III) are therefore dismissed without prejudice. Plaintiff shall be given leave to file an Amended Complaint properly pleading fraud with particularity.

### C.      Fidelity's Claim for Negligence Against Tammi Torbik

In Pennsylvania, a plaintiff who brings a negligence claim must establish that the defendant owed the plaintiff a duty, that the duty was breached, that the breach caused the plaintiff's injury, and that the plaintiff suffered damages.  Harris v. Merchant, No. Civ.A.09–1662, 2010 WL 3734107, at *7 (E.D.Pa. Sept.23, 2010) (citing Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa.2009)).

Ms. Torbik seeks to dismiss the negligence claim against her because (1) any duty owed to Fidelity was as a result of its title agency contract with Whitford and, thus, any breach is barred under the gist of the action doctrine and (2) the claim is barred by the "economic loss doctrine."

### i.      Fidelity's Negligence Claim is Not Barred By The Gist of the Action Doctrine

As discussed above, the gist of the action doctrine bars recovery from a tort where the resulting damage is the result of a breach of contract.  Ms. Torbik has not demonstrated that there was a breach of a relevant contract, however.  First, the breach of contract claim in this case is

15

brought solely against the Cravens.  Furthermore, Ms. Torbik has not demonstrated that she was in privity of contract with Fidelity based on any title agency contract between Whitford and Fidelity.  There is no demonstration that any negligent failure of Ms. Torbik to record the various mortgages or deliver the payout check to Washington Mutual was a breach of contract.  Without demonstrating such, the negligence claim cannot be barred by the gist of the action doctrine.

### ii.     Fidelity's Claim is Barred by The Economic Loss Doctrine

Under Pennsylvania law, a plaintiff is prohibited from recovering for negligence that results solely in economic "solely in economic damages unaccompanied by physical or property damage."  Azur v. Chase Bank, USA, N.A., 601 F.3d 212, 222 (3d Cir. 2010) (quoting Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 175 (3d Cir. 2008)).  The doctrine applies even if there is no contractual relationship between the parties.  Id., at 222-24. n6.  A narrow exception to the rule applies under Section 552 of the Restatement (Second) of Torts for a claim involving "a duty owed when one supplies information to others, for one's own pecuniary gain, where one intends or knows the information will be used by others in the course of their own business activities."  Id. at 223.  In Azur, the Third Circuit Court of Appeals noted that its "holding was limited to 'businesses' which provide services and/or information that they know will be relied upon by third parties in their business endeavors."  Id.

In the current case, Fidelity's claim for negligence against Tammi Torbik is barred by the economic loss doctrine.  Specifically, Fidelity has not alleged or shown that it suffered any damage other than pecuniary loss.  Moreover, Tammi Torbik is not a "business," nor is it alleged that she made negligent misrepresentations to Fidelity such that she could fit into the narrow

exception to the rule.  As a result, the negligence claim against her must be barred and dismissed.

### D.   Fidelity's Claim for Breach of Fiduciary Duty Against Tammi Torbik

To allege a breach of fiduciary duty under Pennsylvania law, a plaintiff must establish the existence of a fiduciary or confidential relationship between her and the defendants.  Nordetek Envtl., Inc. v. RDP Techs, Inc., 862 F. Supp.2d  406, 423 (E.D. Pa. 2012) (citing Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006)).  Additionally,  she must also allege three elements: "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed, (2) that the plaintiff suffered injury, and (3) the defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries."  Id.

In the current case, Fidelity brings suit against Torvik individually for her actions as an employee of Whitford, which was itself an agent acting on behalf of Plaintiff.  Thus, Whitford was an agent of Fidelity, and Torvik was a subagent.  With respect to subagents and their duties, Section 428 of the Second Restatement on Agency provides: "Unless otherwise agreed, a subagent who knows of the existence of the ultimate principal owes him the duties owed by an agent to a principal, except the duties dependent upon the existence of a contract."  Restatement (Second) of Agency § 405(1) (1957); see also Sanoma, Inc. t/a Tarnopol Furs v. Interested Underwriters Concerned Via Ewing Int'l. Marine Corp., No. Civ.A.00-3880, 2001 WL 767602, at *5 (E.D. Pa. July 5, 2001) (citing Restatement).

Torvik claims that Fidelity has not properly pled a breach of fiduciary duty claim because it is not evident that she had any duty to Fidelity.  Torvik contends that she could only

17

(potentially) be liable under an aiding and abetting theory wherein she aided and abetted Whitford in breaching a fiduciary duty to Fidelity.  Torvik also notes that, without including Whitford as a defendant in the suit or alleging any wrongdoing on the part of Whitford, Fidelity cannot find her liable for breach of fiduciary duty.  The Court disagrees.  As noted above, under the Restatement Second of Agency, which has been adopted by courts in this District, a subagent who is aware of duties to a principal can be found to owe a fiduciary duty to that principal.  Moreover, the absence of Whitford as a defendant in this case is not fatal to Fidelity's claim.  Because Torvik had her own fiduciary duty to Fidelity, she could be liable for breaching it independent of an aiding and abetting theory.  Finding this to be the case, we note that Fidelity has sufficiently alleged a claim for breach of fiduciary duty.

### E.    Fidelity's Claim for Breach of Contract Against The Cravens

To establish a breach of contract under Pennsylvania law, a party must demonstrate (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) damages.  Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003).  "When a plaintiff pleads a contract according to its legal effect, the complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond."  Transport Int'l Pool, Inc. v. Ross Stores, Inc., No. Civ.A.06–1812, 2009 WL 1033601, at *3 (E.D. Pa. Apr. 15, 2009).

In the current case, the Cravens move to dismiss this count because they claim Fidelity has not adequately pled the necessary elements for a breach of contract.  However, Plaintiff has

sufficiently stated the contracts at issue—the three mortgages from Washington Mutual which it has assumed as subrogee—such that the Cravens can reasonably respond.  Fidelity attached to the complaint a copy of the mortgage on the Conshohocken property.  Though it did not attach copies of the mortgages on the C-5 and E-5 Bryn Mawr properties, it has sufficiently identified the mortgages for the Cravens to know which contracts are at issue.  As a result, the Cravens motion to dismiss Fidelity's breach of contract claim is denied.

### F.    Fidelity's Claim for Unjust Enrichment Against The Cravens

An action based on unjust enrichment is an equitable action which sounds in quasi-contract, a contract implied in law.  Sevast v. Kakouras, 915 A.2d 1147, 1153 n. 7 (Pa. 2007).  A plaintiff who claims unjust enrichment must "'show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider.'"  Bair v. Purcell, 500 F. Supp. 2d 468, 499 (M.D. Pa. 2007) (quoting Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir.1987)).  Under Pennsylvania law, the elements of a claim for unjust enrichment are: (1) the plaintiff conferred a benefit upon the defendant; (2) an appreciation of such a benefit by the defendant; and (3) the defendant accepted and retained such benefit under circumstances where it would be inequitable for the defendant to retain the benefit without payment of value.  Global Ground Support, LLC v. Glazer Enter., Inc., 581 F.Supp.2d 669, 675 (E.D. Pa. 2008).

Nonetheless, it is a well-established rule that the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon written agreements, no

matter how "harsh the provisions of such contracts may seem in the light of subsequent

happenings."  Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006) (quotations

omitted).  As previously noted by this Court:

> [This] bright-line rule also has deep roots in the classical liberal theory of contract. It
> embodies the principle that parties in contractual privity ... are not entitled to the
> remedies available under a judicially-imposed quasi-contract because the terms of
> their agreement (express or implied) define their respective rights, duties, and
> expectations.

Curley v. Allstate Ins. Co., 289 F. Supp. 2d 614, 620–21 (E.D. Pa. 2003).

Fidelity brings a claim for unjust enrichment citing the fraudulently negotiated check given

to and cashed by Mr. Craven instead of Washington Mutual.  Additionally, the Complaint argues

that the Cravens retained the value of the mortgages on the three properties without paying it

back.  Any unjust enrichment of the Cravens caused as a result of these actions would be the result

of breaches of contracts between the parties—the subject of Count VI of the Complaint.  As such,

the unjust enrichment claim must be dismissed.

### G.    Fidelity's Claim for Conversion Against The Cravens

Conversion is defined as "the deprivation of another's right of property in, or use or

possession of, a chattel, without the owner's consent and without lawful justification."  Leonard

A. Feinbere, Inc. v. Cent. Asia Capital Corp., Ltd., 974 F. Supp. 822, 844–45 (E.D. Pa.1997)

(citation omitted).  Although "[t]he mere existence of a contract between the parties does not

automatically foreclose the parties from raising a tort action[,] . . . a party cannot prevail on its

action of conversion when the pleadings reveal merely a damage claim for breach of contract."

Neyer, Tiseo & Hindo, Ltd. v. Russell, No. Civ.A.92-2983, 1993 WL 53579, at *4 (E.D. Pa. Mar.

2, 1993) (internal citations omitted).  Accordingly, courts have dismissed conversion claims under

the gist of the action doctrine where the alleged entitlement to the chattel arises solely from the contract between the parties. <u>Montgomery v. Fed. Ins. Co.</u>, 836 F. Supp. 292, 301–02 (E.D. Pa. 1993) (dismissing conversion claim because of, inter alia, the "firmly accepted . . . doctrine that an action for conversion will not lie where damages asserted are essentially damages for breach of contract"); <u>Pittsburgh Constr. Co. v. Griffith</u>, 834 A.2d 572, 584 (Pa. Super. Ct. 2003) (stating that where success of the conversion claim "depend [s] entirely on the obligations as defined by the contract," the "gist of the action" doctrine applies). Notably, however, "[w]hen a plaintiff has a property interest in the thing that is the subject of a [conversion] claim, the gist of the action doctrine does not bar recovery under a conversion theory even though the property may also be the subject of a contract." <u>Orthovita, Inc. v. Erbe</u>, No. Civ.A.07-2395, 2008 WL 423446, at *6 (E.D. Pa. Feb. 14, 2008) (citing <u>Bereer & Montague v. Scott & Scott</u>, 153 F. Supp. 2d 750, 753–54 (E.D. Pa. 2001) (holding that conversion claim was not barred when plaintiff had property interest in proceeds that were both the subject of the breach of contract and conversion claims)).

Fidelity alleges that the Cravens are liable for converting the proceeds of the various loans and mortgages taken on the three properties at issue. The Cravens move to dismiss Fidelity's conversion claim as being barred by the gist of the action doctrine. The Court agrees with the Cravens on this count. Because the money alleged to have been converted is the exact subject matter of the mortgage and loan contracts, the property interest in the money is governed by contract law. The gist of the action doctrine prevents recovery under a tort theory of conversion, and Fidelity can recover only under a breach of contract theory. The Motion is granted as to the conversion claim.

**H.     Fidelity's Claim for Civil Conspiracy Against All Defendants**

21

"The essential elements of a claim for civil conspiracy are: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and, (3) actual legal damage . . . .  Proof of malice, or an intent to injure, is also an essential part of a cause of action for conspiracy."  Commonwealth v. TAP Pharm. Prods., Inc., 36 A.3d 1112, 1144 (Pa. Commw. Ct. 2011).  Malice requires proof that the conspirators took unlawful actions with the specific intent to injure the plaintiff, instead of simply furthering their own interests through unlawful means.  See id. at 1185 (collecting cases).

Both the Cravens and Ms. Torbik argue that Fidelity's civil conspiracy claim fails to meet the Twombly and Iqbal standard as it alleges conclusions of law without the necessary accompanying facts.  The Court agrees.  For example, paragraph 145 states that "The Conspirators engaged in numerous overt acts which they knew or had reason to know were fraudulent, wrongful, and criminal."  However, Fidelity does not specify the overt acts each defendant takes. While there are numerous facts alleged in the Complaint, none are specified as being the overt acts of the conspiracy.  Additionally, though Fidelity claims that conspirators knew or had reason to know their acts were "fraudulent, wrongful, and criminal," it does not adequately allege malice by noting that Defendants acted with the specific intent to harm Plaintiff.  As such, the claim for civil conspiracy will be dismissed without prejudice and with leave to amend.

I.      **Fidelity's RICO Claim Against All Defendants**

A claim for civil RICO under 18 U.S.C. § 1962(C) requires a plaintiff to plead four elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity.  In re

Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362–363 (3d Cir. 2010).  The Cravens and Ms.

Torbik claim that Fidelity has failed to properly allege an enterprise or a pattern of racketeering

activity.

**i.       Fidelity Has Failed To Adequately Allege An Enterprise**

Section 1961(4) defines enterprise as including "any individual, partnership, corporation,

association, or other legal entity, and any union or group of individuals associated in fact although

not a legal entity."  The statute describes two categories of enterprises: "[t]he first encompasses

organizations such as corporations and partnerships, and other 'legal entities.' The second covers

'any union or group of individuals associated in fact although not a legal entity.' "  United States

v. Turkette, 452 U.S. 576, 581–82 (1981) (quoting 18 U.S.C. § 1961(4)).  Whereas associations

from the first category are relatively straightforward, those in the second category prove to be

more difficult.  For an association-in-fact enterprise, there must be "'some sort of structure . . .

within the group for the making of decisions, whether it be hierarchical or consensual. There must

be some mechanism for controlling and directing the affairs of the group on an on-going, rather

than ad hoc, basis.'"  In re Ins. Brokerage Antitrust Litig., 618 F.3d at 365 (quoting Turkette, 452

U.S. at 222).  Second, the associates must function as a continuing unit.  Id. at 365.  Finally, the

association-in-fact be "an entity separate and apart from the pattern of activity in which it

engages." Id. (quoting Turkette, 452 U.S. at 583).  On this last requirement:

> [It] is not necessary to show that the enterprise has some function wholly unrelated to
> the racketeering activity, but rather that it has an existence beyond that which is
> necessary merely to commit each of the acts charged as predicate racketeering
> offenses. The function of overseeing and coordinating the commission of several
> different predicate offenses and other activities on an on-going basis is adequate to
> satisfy the separate existence requirement.

23

Id. (quoting United States v. Riccobene, 709 F.2d 214, 223–24 (3d Cir. 1983)).

Fidelity has failed to properly allege the facts necessary to demonstrate that any arrangement between the Cravens and with Ms. Torvik was an enterprise.  It is certainly not a legal entity, and Fidelity has not sufficiently alleged that it is an association-in-fact.  There are no facts pled suggesting there is an associational structure which encompasses the Cravens and Torbik or that this association is or was a continuing unit.  Moreover, the Complaint does not allege facts suggesting that the supposed enterprise is an entity separate and apart from the alleged pattern of racketeering.  Without more, the RICO count becomes simply a "threadbare recitals of the elements of a cause of action" that Iqbal prohibits.

### ii.    Fidelity Has Failed To Allege A Pattern Or Practice Of Racketeering

"To establish a pattern of racketeering activity, a plaintiff must allege the commission of 'at least two acts of racketeering activity' or 'predicate acts,' as set forth in 18 U.S.C. § 1961(1)." Schatzberg v. State Farm Mut. Auto. Ins. Co., No. Civ.A.10-2900, 2012 WL 2864475, at *11 (E.D. Pa. July 12, 2012) (citing 18 U.S.C. § 1961(5)).  However, not every scheme of two or more events constitutes a pattern; "a plaintiff must show that (1) the defendants' predicate acts are related, in that they have similar 'purposes, results, participants, victims, or methods of commission,' and (2) the defendants' conduct is 'continuous.'"  Id. (quoting Zahl v. N.J. Dep't of Law and Pub. Safety, 428 F. App'x 205, 211 (3d Cir. 2011).

Continuity can be demonstrated by demonstrated by either allegations of repeated conduct that occurred over a substantial, closed period of time, or allegations of conduct that constitutes a threat of continuing criminal action.  H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239–40 (1989).

If alleging that the conduct occurred over a closed period of time, a complaint must state that the acts took place over a substantial duration of time.  Id. at 242.  The Third Circuit Court of Appeals has not set a "litmus test" to measure duration, but it has held that twelve months is not a substantial period of time.  Hughes v. Consol. Pa. Coal Co., 945 F.2d 594, 611 (3d Cir. 1991).  If the complaint does not provide a sufficient basis for duration, it may meet the continuity test by alleging a threat of continued criminal action.  H.J. Inc., 492 U.S. at 239–40.

The Cravens and Ms. Torbik contend that Fidelity has failed to properly allege a pattern of racketeering activity.  Assuming for purposes of this memo that the underlying fraudulent activity alleged meets the requirement of racketeering activity (as defined in 18 U.S.C. § 1961(1),[3] then Fidelity has failed to allege that the activity engaged in was continuous—either that it occurred over a substantial period of time or is a continuing threat.  The allegations in the RICO Count are, again, the type of threadbare recitals prohibited by Iqbal.

For the reasons stated above, Fidelity's RICO claim will be dismissed without prejudice and with leave to amend.

IV.     CONCLUSION

In light of the foregoing, the Court grants the Cravens and Ms. Torbik's Motions to Dismiss in part and denies them in part.  Both motions are granted without prejudice and with leave to amend for counts for Counts I–III (fraud).  Fidelity has not met the heightened pleading requirement the Federal Rules require for such claims.  Both motions are also granted without

---

[3]Because the Court decided *infra* to dismiss the fraud counts for failure to meet the heightened pleading requirement, Fidelity would need to re-plead these counts or demonstrate that the enterprise engaged in other prohibited racketeering activity.

prejudice and with leave to amend on Counts IX (civil conspiracy) and RICO (Count X).  Fidelity

has failed to adequately allege the necessary facts to meet the heightened pleading standard

required by <u>Twombly</u> and <u>Iqbal</u>.  Ms. Torbik's Motion to Dismiss Count IV (negligence) is

granted with prejudice, as the negligence claim against Ms. Torbik is barred by the economic loss

doctrine.  Ms. Torbik's motion is denied as to Count V (breach of fiduciary duty), as she has not

demonstrated a lack of a fiduciary duty owed to Fidelity.  The Cravens motion for Count VI

(breach of contract) is denied, as the Complaint sufficiently alleges the existence and breach of the

mortgage contracts at issue.  The Cravens motion is denied on Count VII (unjust enrichment), as

the existence of a relevant and valid contract prevents recovery under this theory.  Count VIII

(conversion) is dismissed with prejudice, as it is barred by the gist of the action doctrine

       An appropriate Order follows.